Michele Beilke (State Bar No. 194098)
mbeilke@HuntonAK.com
Kirk A. Hornbeck (State Bar No. 241708)
khornbeck@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for Defendants
STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PICETTI, individually, and on behalf of other members of the general public similarly situated;<br><br>        Plaintiff,<br><br>    v.<br><br>STRYKER CORPORATION, a Michigan corporation; HOWMEDICA OSTEONICS CORP., a New Jersey Corporation; and DOES 1 to 100, inclusive;<br><br>        Defendants. | Case No.:<br><br>**DEFENDANTS STRYKER CORPORATION AND HOWMEDICA OSTEONICS CORP.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTION 1441(b)**<br><br>[*Filed concurrently with Civil Cover Sheet; Corporate Disclosure Statement; Certification of Conflicts and Interested Entities or Persons; and Certificate of Service*]<br><br>Complaint Filed: November 26, 2019 |

DEFENDANTS' NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005 ("CAFA")), 1441, 1446, and 1453, Defendants Stryker Corporation ("Stryker Corporation") and Howmedica Osteonics Corp. ("Howmedica") (collectively, "Defendants") hereby remove the state court action described below to this Court. In support thereof, Defendants state as follows:

1. On November 26, 2019, Plaintiff Robert Picetti filed a putative misclassification class action that is currently pending in the Superior Court of the State of California, County of Alameda, as Case No. RG19044860, *Robert Picetti v. Stryker Corporation, et al.* (the "State Action").

2. On December 3, 2019, Defendants were served with the Summons and Complaint in the State Action.

3. On January 2, 2020, Defendants timely filed a Notice of Removal ("First Notice") pursuant to 28 U.S.C. § 1446(b)(1). Plaintiff subsequently filed a Motion to Remand, which Defendants opposed. On June 8, 2020, the Court granted Plaintiff's Motion to Remand on the grounds that: (a) diversity jurisdiction did not exist under 28 U.S.C. §§ 1332(a) because Defendants had not established that the amount-in-controversy exceeded $75,000; and (b) jurisdiction did not exist under CAFA because Defendants had not established that the amount-in-controversy exceeded CAFA's jurisdictional minimum of $5 million. *See* N.D. Cal. Case No. 4:20-cv-00088-JST, Dkt #26 (Tigar, J.). A copy of the remand order ("Remand Order") issued by the Honorable Jon. S. Tigar on June 8, 2020 is attached hereto as **Exhibit A**.

4. Following remand, discovery commenced in the State Action. On September 29 and October 2, 2020, Defendants obtained discovery from Plaintiff which Defendants had reason to believe established that the requisite jurisdictional minimums were satisfied for 28 U.S.C. §§ 1332(a) (diversity jurisdiction) and/or 28 U.S.C. §§ 1332(d) (CAFA).

5. On October 23, 2020, Defendants filed their Amended Answer in the State Action.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

6. On October 23, 2020, based on the later-discovered facts, Defendants also filed a second Notice of Removal ("Second Notice") pursuant to 28 U.S.C. §§ 1332(a) and 28 U.S.C. §§ 1332(d). Plaintiff subsequently filed a Motion to Remand, which Defendants opposed. On May 17, 2021, the Court granted Plaintiff's Motion to Remand on the grounds that Defendants had failed to establish that the requisite jurisdictional amounts-in-controversy were satisfied. *See* N.D. Cal. Case No. 3:20-cv-07454-MMC, Dkt #42 (Chesney, J.).

7. Following remand, discovery continued. The parties each filed motions to compel in the State Action to resolve various discovery disputes.

8. On September 2, 2022, Defendants moved for summary judgment or, in the alternative, summary adjudication on grounds including that Plaintiff was properly classified as an exempt employee. On May 12, 2023, following stipulated continuances, Plaintiff filed his opposition, and Defendants filed their reply memorandum on May 22, 2023. The hearing on Defendants summary judgment motion was set for June 1, 2023.

9. On May 22, 2023, however, the same day that Defendants filed their reply memorandum in support of their summary judgment motion, Plaintiff served responses to four sets of discovery requests bearing on this Court's ability to exercise jurisdiction under CAFA.

10. Upon information and belief, there have been no other proceedings in the State Action.

11. As explained below, the State Action is one that may be removed to this Court because Defendants have satisfied the procedural requirements for removal and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) (CAFA).

**I.
DEFENDANTS HAVE SATISFIED THE
PROCEDURAL REQUIREMENTS FOR REMOVAL**

12. A party is permitted to seek a successive removal based on the same grounds as a prior removal so long as it is triggered by newly discovered facts "alter[ing] the circumstances bearing on jurisdiction." *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015). Here, as demonstrated below, the instant Notice of Removal is grounded in new factual contentions

1  that Plaintiffs served upon Defendant for the first time on May 22, 2023, less than a week ago. Thus, Defendants' successive removal effort is proper under controlling Ninth Circuit precedent.

13.  Under CAFA, where a complaint is not removable on its face, then a notice of removal may be filed within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §1446(b)(3); *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (affirming removal where defendant timely removed within 30 days after discovery responses first revealed amount in controversy over $5 million 14 months after the complaint was filed and one month after plaintiff obtained class certification in state court). Here, as noted above, Defendants received "other paper" (*i.e.*, discovery responses) less than a week ago establishing for the first time that this case is, or has become, removable. Thus, Defendants' Notice of Removal is timely.

14.  Venue lies in the United States District Court for the Northern District of California because the State Action was filed by Plaintiff and is now pending in this judicial district. *See* 28 U.S.C. §1446(a) (mandating venue for removal actions).

15.  Pursuant to 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders served upon Defendants, which papers include the Summons and Complaint, is attached hereto as **Exhibit B**.

16.  Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal is being served upon Plaintiff's counsel and a copy is being filed with the Clerk of the Superior Court for the State of California, County of Alameda.

## II.
## REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION

17.  The State Action is a civil action over which this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified as 28 U.S.C. §§1332(d), 1453, 1711-1715).

18. Congress enacted CAFA with the intent "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications" to prevent plaintiffs from enjoying, or seeming to enjoy, "a home court advantage against outsiders." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019) (internal quotation marks omitted). Consistent with Congressional intent, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

19. Pursuant to CAFA, federal courts have original jurisdiction over a class action if: (a) it involves 100 or more putative class members; (b) any class member is a citizen of a state different from any defendant; and (c) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §1332(d).

20. As set forth below, this is a putative class action in which, as alleged: (a) there are more than 100 members in Plaintiff's proposed class; (b) Plaintiff and the members of the putative class have a different citizenship than Defendants; and (c) the claims of the proposed class members exceed the sum or value of $5 million in the aggregate, exclusive of interest and costs. Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d).

### A. This Is A Class Action Consisting Of More Than 100 Members

21. Plaintiff proposes to certify a class of Defendants' current and former California-based employees "paid wholly or in-part on a commission basis within the State of California" at any time during the relevant period, which spans from November 26, 2015, to the present. (Compl. ¶ 12.)

22. Between November 26, 2015 and January 2, 2020, Howmedica employed more than 250 California-based employees who were paid in whole or in part on a commission basis in California. Accordingly, the proposed class exceeds 100 members.

### B. The Diversity Of Citizenship Requirement Is Satisfied

23. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). As alleged in

the Complaint, Plaintiff "is an individual residing in the State of California." (Compl. ¶ 5.) Thus, Plaintiff is a citizen and resident of California for jurisdictional purposes.

24. Defendant Stryker Corporation is, and has been at all relevant times, a Michigan corporation with its principal place of business in Michigan. The phrase "principal place of business" in 28 U.S.C. §1332(c)(1) refers to the place where a corporation's high-level officers direct, control, and coordinate the corporation's activities, *i.e.*, its "nerve center," which typically will be found at its corporate headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1192-93 (2010). At all relevant times, Stryker Corporation's corporate headquarters where its high level officers directed, controlled, and coordinated the corporation's activities has been located in Michigan. Thus, for removal purposes, Stryker Corporation is a citizen of Michigan, not California. *See* 28 U.S.C. § 1332(c)(1).

25. Defendant Howmedica is, and has been at all relevant times, a New Jersey corporation with its principal place of business in New Jersey. At all relevant times, Howmedica's corporate headquarters where its high level officers directed, controlled, and coordinated the corporation's activities has been located in New Jersey. Thus, for removal purposes, Howmedica is a citizen of New Jersey, not California. *See* 28 U.S.C. § 1332(c)(1).

26. The citizenship of unidentified Doe defendants is not considered in determining diversity of citizenship for federal subject matter jurisdiction purposes. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

27. Because Plaintiff is a citizen of California, and Defendants are citizens of Michigan and New Jersey, respectively, the requisite diversity of citizenship exists. *See* 28 U.S.C. §1332(c)(1).

C. **The Amount In Controversy Requirement Is Satisfied**

28. To satisfy the amount in controversy requirement under CAFA, a defendant need only plausibly allege that the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 135 S. Ct. 547, 551 (2014) ("To assert the amount in controversy adequately in the removal . . . it suffice[s] to allege the requisite amount plausibly.");

*Castro v. ABM Indus., Inc.*, 2017 WL 4682816, at *2 (N.D. Cal. Oct. 19, 2017) ("[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much") (internal quotation marks omitted).

29. This is a misclassification case. Plaintiff and the putative class members were classified as exempt employees. Nevertheless, Plaintiff asserts claims under the California Labor Code for: (a) alleged failures to pay meal period and rest break premiums (Cal. Lab. Code §§ 226.7 and 512(a)); (b) alleged failures to pay a minimum wage and overtime wages (Cal. Lab. Code §§ 510, 1194, 1197, and 1198); (c) alleged failure to timely pay final wages, *i.e.*, a claim for "waiting time penalties" (Cal. Lab. Code §§ 201 and 202); and (d) alleged failures to provide compliant wage statements (Cal. Lab. Code § 226(a)). (Compl. ¶¶43-89.) Plaintiff also asserts a claim for unfair competition pursuant to California Business and Professions Code §§17200, *et seq.* ("Section 17200").[1] (Compl. ¶¶93-99.) And Plaintiff seeks attorneys' fees and costs. (FAC, Prayer ¶¶8, 15, 26, 48.) These claims unequivocally present exposure greater than $5 million.

30. **Plaintiff And The Putative Class Held Full-Time Positions:** As alleged above, Howmedica employed more than 250 putative class members between November 26, 2015 and January 2, 2020. By way of background, each of those putative class members held one of approximately 45 different positions, but: (a) all such positions were advertised as full-time positions and the individuals were hired as full-time employees; (b) Howmedica had a reasonable expectation that the individuals in all of those positions would be working full-time (*i.e.*, approximately 40 hours per week or more during a five-day workweek); and (c) there were no part-time employees in those positions.

31. Consistent with the foregoing, Plaintiff has confirmed in written discovery responses he served upon Defendants within the last week that: (a) Plaintiff contends his own claims are "sufficiently similar" to those of other putative class members for him to represent the putative class

---

[1] After filing the Complaint, Plaintiff dismissed his cause of action for unreimbursed business expenses, which he brought pursuant to California Labor Code §§2800 and 2802. (Compl. ¶¶90-92.)

(RFA22); and (b) the harm Plaintiff contends he suffered is "sufficiently similar" to those of other putative class members for him to represent the putative class (RFA27).

32.  In response to interrogatories asking whether the damages Plaintiff contends he suffered as a result of Defendants' allegedly unlawful policies are similar to other putative class members, Plaintiff confirmed within the last week that he seeks to represent: (a) "a putative class that similarly was not properly paid minimum and overtime wages for all hours worked;" and (b) a putative class that "similarly was not provided the opportunity" to take the requisite meal periods and rest breaks. (SROG19, 24, 29.)

33.  Moreover, when asked whether Plaintiff's claimed damages are dissimilar to the alleged damages of any other putative class member, Plaintiff did not identify any such differences in the discovery responses he served within the last week. (SROG20, 25, 30.)

34.  **Average Regular Rate Of Pay:** By way of background, information from Howmedica's payroll records indicate that the putative class members' approximate average regular rate of pay based on a 40-hour workweek was as follows: (a) $68.29/hour between November 26, 2015 to December 31, 2015; (b) $54.72/hour in 2016; (c) $64.52/hour in 2017; (d) $58.93/hour in 2018; and (d) $67.54/hour in 2019.

35.  To calculate the approximate average regular rate of pay another way, the putative class members worked approximately 32,802 workweeks between November 26, 2015 and January 2, 2020, and earned an average amount of approximately $2,355 in commissions per workweek during that time period. Based on those figures, the approximate average regular rate of pay is $58.88/hour.[2] In the calculations below, Defendants uses that figure for purposes of calculating the amount-in-controversy, although CAFA's $5 million jurisdictional threshold also would be easily satisfied by assuming the lowest annual average ($54.72/hour) applied across the entire relevant period.

---

[2] The calculation is: $2,355 (average commission per workweek) / 40 (hours per workweek) = $58.88 per hour.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071

36. **Meal Period And Rest Break Premiums:** Under the California Labor Code, an employer must pay employees "one additional hour of pay" at the employee's regular rate when it fails to provide a meal period or a rest break. Cal. Lab. Code § 226.7(c).

37. Plaintiff alleges that "[a]s a pattern and practice during the relevant time period" Defendants failed to provide the putative class members with "an uninterrupted meal period of not less than thirty (30) minutes." (Compl. ¶¶57-58; *see also* Compl. ¶ 36.)

38. Plaintiff similarly alleges that "[a]s a pattern and practice during the relevant time period" Defendants required the putative class members to "work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked." (Compl. ¶ 67; *see also* Compl. ¶ 36.)

39. Where, as here, a complaint contains "pattern and practice" allegations, courts in this judicial district have determined that a 20% violation rate is reasonable.[3] *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) ("[c]ourts in this circuit have found that allegations of a 'pattern and practice' of conduct support a 20% violation rate as reasonable"); *Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods.").)

40. Based on an assumed violation rate of 20%, Plaintiff's meal period and rest break claims put **$3,862,763.52** in controversy.[4]

41. **Overtime Pay Or Minimum Wages:** The California Labor Code requires employers to pay employees 1.5 times their regular rate of pay for hours worked over eight hours per day or 40 hours per week. Cal. Lab. Code § 510. Additionally, employees who are not paid minimum wage may recover the amount withheld plus liquidated damages. *Id.* §§ 1194, 1197. For purposes of calculating the amount-in-controversy under CAFA, however, a removing defendant may not "double

---

[3] In calculating the amount-in-controversy, Defendants rely on authorities, findings, and calculations set forth in Judge Tigar's June 8, 2020 Remand Order.
[4] The calculation is: [$58.88 (hourly rate) x 1 (meal period premium) x 32,802 (workweeks)] + [$58.88 (hourly rate) x 1 (rest period premium) x 32,802 (workweeks)] = $3,862,763.52.

count" overtime and minimum wage claims. *Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *3 (N.D. Cal. Jan. 9, 2018).

42. With respect to his overtime claim, Plaintiff alleges that Defendants "intentionally and willfully" failed to pay overtime wages to the putative class members during the relevant period "[a]s a pattern and practice." (Compl. ¶¶ 44, 48, 49.)

43. With respect to his minimum wage claim, Plaintiff similarly alleges that during the relevant time period Defendants failed to pay the putative class members "at least minimum wages" for all hours worked "[a]s a pattern and practice." (Compl. ¶37.)

44. Courts have found that once-weekly violations are a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations." *Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019).

45. Assuming once-weekly overtime violations, Plaintiff's claim puts **$2,897,072.64** in controversy.[5]

46. In the alternative, assuming once-weekly minimum wage violations, Plaintiff's claim puts **$562,554.30** in controversy.[6]

47. **Waiting Time Penalties:** Pursuant to California Labor Code §203, where an employer willfully fails to pay all wages at termination, the employee is entitled to a statutory penalty of up to 30 days' wages. (*See also* Compl. ¶81 (describing waiting time penalties).)

48. Plaintiffs allege that Defendants "intentionally and willfully" failed to timely pay Plaintiff and other putative class members all of the wages they were owed at termination. (Compl. ¶¶78-80.) Approximately 108 putative class members had their employment end between November 26, 2016 (*i.e.*, three years before the filing of the complaint) and January 2, 2020. As noted above,

---

[5] The calculation is: 32,802 (approximate workweeks in relevant period) x 1 (assumed violation per workweek) x $58.88 (hourly rate) x 1.5 (overtime rate) = $2,897,072.64.

[6] The calculation is: [32,802 (workweeks) x 1 (violation per week) x $9.80 (blended minimum wage in California from 2015 to 2019)] + $241,09.70 (liquidated damages) = $562,554.30.

Defendants allege that the approximate average regular rate of pay for the putative class is $58.88/hour.

49. For waiting time penalties, an assumed violation rate of 100% is reasonable because such penalties are derivative of Plaintiff's other claims. *See, e.g., Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *6 (N.D. Cal. Oct. 25, 2019) ("[I]f every putative class member incurred damages for at least one other claim in the complaint, every class member who departed defendant during the statutory period was due unpaid wages.").

50. Based on the foregoing, Plaintiff's claim for waiting time penalties puts **$1,562,169.60** in controversy.[7]

51. Based on the foregoing, the amount-in-controversy exceeds CAFA's jurisdictional minimum after accounting only for a subset of Plaintiff's claims, as summarized in the chart below:

| **Cause of Action** | **Amount in Controversy** |
|---|---|
| Meal Period and Rest Breaks | $3,862,763.52 |
| Minimum Wage | $562,554.30 |
| Waiting Time Penalties | $1,562,169.60 |
| **TOTAL:** | **$5,987,487.42** |

52. **Other Claims:** Plaintiff also alleges that Defendant failed to provide the putative class with accurate wage statements in violation of California Labor Code §226. (Compl. ¶¶83-89.) An employee "suffering injury as a result of a knowing and intentional failure" by an employer to provide accurate wage statement "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code §226(e)(1). In addition, Plaintiff asserts a cause of action based on allegedly unlawful business practices in violation of Business and Professions Code §§ 17200, *et seq*. Even though Defendants have not assigned any particular amount to these causes

---

[7] The calculation is: 108 (terminated employees) x $58.88 (hourly rate) x 8 (hours per day) x 30 (maximum statutory penalty days) = $1,562,169.60.

of action, assignment of any sum only further increases the amount in controversy well beyond $5 million.

53. Moreover, Plaintiff seeks attorneys' fees, which are properly included when calculating CAFA's $5 million exposure threshold. *Yeroushalmi v. Blockbuster, Inc.*, 2005 WL 2083008 (C.D. Cal. July 11, 2005) (including attorneys' fees for purposes of amount in controversy requirement, and concluding that the court had jurisdiction under CAFA).

54. Based on the foregoing, there can be no dispute that CAFA's amount in controversy requirement is satisfied, and removal to this Court is proper.

**WHEREFORE**, Defendants hereby remove the State Action from the Superior Court of the State of California, County of Alameda, to this Court, pursuant to 28 U.S.C. §1441(b).

Dated: May 26, 2023

**HUNTON ANDREWS KURTH LLP**
Michele J. Beilke
Kirk A. Hornbeck

By:     /s/ Michele J. Beilke
Michele J. Beilke
Attorneys for Defendants
STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP.